ORDERED in the Southern District of Florida on *January 11, 2008*



John K. Olson, Judge
United States Bankruptcy Court

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION

In re:                                     :
                                           :   **Case No. 06-15867-BKC-JKO**
**PAUL FRANCIS WRUBLESKI,**                :
                                           :   **Chapter 13**
    Debtor.                           :
                                           :
_____:

## ORDER DENYING DEBTOR'S MOTION TO RECONSIDER
## AND VACATE ORDER DISMISSING CASE

    **This case** presents the curious tale of a Chapter 13 Debtor who apparently believes that the

United States Treasury owes him at least $10 million and so, *mirabile dictu,* he can draw on this

glorious balance to setoff and thus satisfy $163,517.65 which the Internal Revenue Service asserts

he owes for income taxes, penalties and interest.  How exactly it is that the United States came to

owe Mr. Wrubleski $10 million (or more) is never made perfectly clear but perhaps, as Thomas

Carlyle exclaimed in his *History of the French Revolution* (1837), "The Age of Miracles is forever

here!"  Or more likely, at least as far as this Debtor is concerned, "miracles are past."  William

Shakespeare, *All's Well That Ends Well,* Act II, Scene iii.

Before me is Paul Francis Wrubleski's (the "Debtor") Motion to Reconsider and Vacate Order Dismissing Case (the "Motion")[DE 59]. A hearing on the motion was held on July 7, 2007. As the Debtor has provided no new legal argument to substantiate the Court vacating the Order dismissing this case [DE 46], the motion is denied.

### Background

The Debtor filed his Chapter 13 voluntary petition on November 15, 2006 [DE 1]. In the petition under Schedule E, which lists creditors holding priority unsecured claims, the debtor indicates an obligation for "Taxes and certain other debts owed to governmental units" and solely schedules an Internal Revenue Service (the "IRS") claim as "disputed" valued at the amount of $0.00. *Id.* Additionally, the Debtor's proposed Chapter 13 Plan does not make provision for the payment of anything to the IRS [DE 12]. The IRS has filed a secured Proof of Claim in the principal amount of $134, 407.24 plus interest at the rate of 8%, aggregating $163,517.65, due to Debtor's nonpayment of his personal income tax and civil penalties. *See* "Exhibit A" in [DE 24]. The IRS has also filed a Notice of Federal Tax Lien in Broward County, Florida, which attaches to all property of the Debtor currently owned and to all future property. *See* "Exhibit C" in [DE 59]. On March 7, 2007, the IRS filed an objection to confirmation of the plan [DE 28] citing the omission of payment in the plan on its priority claim and stating that, "[t]he debtor has not shown sufficient financial information to allow the Internal Revenue Service to make a determination as to whether the plan is feasible."

In response to the IRS's filing of a proof of claim, Debtor sent Bonded Promissory Note #PFW021907 (the "Bonded Promissory Note") in the sum of $10,000,000 to Henry M. Paulsen,

Jr.[sic][1], the Secretary of the United States Treasury and to Robin R. Weiner, the standing Chapter 13 Trustee (the "Trustee"). *See* "Exhibit A" in [DE 59]. The Bonded Promissory Note purports to appoint the Trustee as the "fiduciary trustee"on this note and pursuant to a letter of instructions sent by the Debtor to the Trustee, the Debtor instructed the Trustee to settle all claims held by the IRS, apparently using funds covered by the Bonded Promissory Note. In addition the Debtor directed the Trustee to file all requisite tax returns on his behalf and provide him copies of all documents filed with the IRS

On March 23, 2007, the Trustee filed a motion to Declare Debtor's Notice Of Appointment of Robin R. Weiner as Fiduciary Trustee on Bonded Promissory Note #PFW021907 a Nullity [DE 36]. A hearing to nullify the appointment of the Trustee was held on April 9, 2007 and this Court entered an order [DE 42], on April 24, 2007, granting that motion.

Confirmation of the proposed Chapter 13 plan was denied and the case was dismissed by Order [DE 46] on May 21, 2007. The Debtor filed an Emergency Motion to Reinstate Case [DE 47] on May 22, 2007, and a hearing was held on May 29, 2007. The Motion before the Court was filed on June 13, 2007.

## Discussion

The Debtor frivolously attempts to setoff his tax liabilities utilizing what is commonly known as a "straw man" argument. As these frivolous tax arguments come in many different forms and variations and since the Debtor provides no memorandum of law supporting his claims, a full understanding of Debtor's actual argument is hard to ascertain. Thus, it is left to this Court to

---

[1]The name of the Secretary of the Treasury is Henry M. Paulson, Jr.

3

attempt to piecemeal some semblance of an understanding of Debtor's legal assertions. The IRS

succinctly explains its understanding of the crux of this argument:

> The "straw man" claim is premised on the erroneous theory that most government documents do not actually refer to individuals. Users of the "straw man" theory falsely claim that only documents using an individual's name with "standard" capitalization, i.e., lower-case with only the beginning letters of each name capitalized, are legitimate. These individuals erroneously argue that the use of the individual's name in all upper-case letters, which is common in some government documents, refers to a separate legal entity, called a "straw man." These individuals also erroneously argue that, as a result of the creation of a "straw man," they are not liable for the debts, including the tax debts, of their "straw man," that taxing the "straw man" is illegal because the "straw man" is a debt instrument based upon the labor of a real person and is, therefore, a form of slavery, or that no tax is owed by the real individual because it can be satisfied, or offset, by money in a "Treasury Direct Account" held in the name of the "straw man."

Rev. Rul. 2005-21; 2005-1 C.B. 822. The Court gathers that the Debtor contends that through this

commercial interaction with the government a trademarked entity – PAUL FRANCIS WRUBLESKI

– has been created. This entity, and not the human being whom the Debtor styles "Paul Francis

Wrubleski" and whom the Debtor contends is a juridically different person, is the beneficiary of the

mysterious $10 million-plus debt owed to it from the federal government.

The Debtor has allegedly gained control of his straw man, PAUL FRANCIS WRUBLESKI

– a trademarked entity – through commercial dealings with his straw man under the Uniform

Commercial Code (the "UCC"). A State of Florida UCC Financing Statement purporting to describe

a transaction between "PAUL FRANCIS WRUBLESKI" – a "Transmitting Utility"[2] – and "Paul

Francis Wrubleski," was filed on June 22, 2004. *See* Registry # 20040723411 *at* Florida Secured

Transaction Registry <http://www.floridaucc.com>.   Under this alleged transaction "PAUL

FRANCIS WRUBLESKI" has collateralized its debt to "Paul Francis Wrubleski" through an interest

---

[2]A transmitting utility is, of course, a commercial enterprise engaged in, *e.g.,* the transmission of electrical power.  The transmission of arrant legal nonsense does not qualify.

in "[a]ll of the debtor's assets, land, and personal property, and all of debtor's rights in said assets, land, and personal property," both present and in the future.  *Id.*

### The asserted trademark

The first question before me is whether there is any merit to Debtor's claim that he holds a common law trademark interest in "PAUL FRANCIS WRUBLESKI."  Fundamental to trademark law is the concept of use.  As a result, registration of a trademark is less important then use of a specific mark.  Moreover, a party that registers or owns the rights to a mark, without use, develops no trademark rights under the U.S. trademark laws. *Goldberg v. Cuzcatlan Bevs., Inc. (In re Impact Distribs.)*, 260 B.R. 48, 53 (Bankr. S.D. Fla. 2001).  "As a result, the party that first uses a mark, develops common law trademark rights that are, or may be, superior to the rights acquired by a later registrant of the mark." *Id.*  Section 43(a) of the Lanham Act proscribes unfair commercial practices leading to the infringement of a valid trademark; it is "remedial in nature and should be interpreted and applied broadly so as to effectuate its remedial purpose." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citations omitted); 15 U.S.C. § 1125(a) (2007).

Here, the Debtor claims a common law right to the trademark "PAUL FRANCIS WRUBLESKI."  Under the common law, trademark rights are appropriated only through actual prior use in commerce. *United States v. Steffens*, 100 U.S. 82 (1879); See also *Planetary Motion, 261 F.3d at 1193*; *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1022 (11th Cir. 1989).  Hence, actual and continuous use of the trademark in commerce is essential to assume and preserve an interest in that mark.

Under the Lanham Act, the term "use in commerce" means the "bona fide use of a mark in the ordinary course of trade." Thus, use in commerce is defined:

(1) on goods when–

(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and

(B) the goods are sold or transported in commerce, and

(2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

15 U.S.C. § 1127 (2007).

The Eleventh Circuit has discussed the standards for "prior use" in a variety of ways with a consistent theme that it is the burden of the individual claiming trademark rights to establish "adoption" and "use." *SM Licensing Corp. v. U.S. Med. Care Holdings LLC*, 2007 U.S. Dist. LEXIS 50877, *31-33 (S.D. Fla. July 13, 2007). For example, in *Planetary Motion* the Eleventh Circuit looked to how other Circuit courts analyzed "prior use," finding that:

Evidence showing, first, adoption, and, second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark, is competent to establish ownership, even without evidence of actual sales.

261 F.3d at 1195 (footnotes omitted) (*citing New England Duplicating Co. v. Mendes*, 190 F.2d 415, 417-18 (1st Cir. 1951), and *New West Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1200 (9th Cir. 1979)). Similarly, in *Tally-Ho*, the Eleventh Circuit analyzed "prior use" under the Lanham Act and Florida common law, requiring that:

6

(1) [those seeking trademark rights] first adopted and used a certain name . . . in a certain market or trade area, as a means of establishing good will and reputation and to describe, identify or denominate particular services rendered or offered by it . . . and to distinguish them from similar services rendered or offered (or similar goods marketed) by others, and

(2) through its association with such services or goods . . . [those individuals have] acquired a special significance as the name of the services rendered (or goods marketed) . . .

889 F. 2d at 1026 (*citing American Bank v. First American Bank & Trust*, 455 So. 2d 443, 445-46 (Fla. 5th DCA 1984)).

In this matter there exists no evidence on the record to demonstrate that the Debtor has adopted and used the name "PAUL FRANCIS WRUBLESKI" for commercial purposes. The mere assertion that one has a common law trademark based on a theoretical notion that the government interacts with a person's straw man, or some other derivation of the frivolous tax position, does not satisfy the standard required to show "prior use" sufficient to demonstrate a mark distinguishable in the public mind.

The Debtor has attempted to establish in the public record that he holds a right to a common law trademark in "PAUL FRANCIS WRUBLESKI." This is evidenced by his Florida UCC filing discussed above. Unfortunately, the filing of a UCC transaction between oneself and his alleged straw man does not establish or create a common law trademark. *See, e.g., In re Lowe*, 2007 Bankr. LEXIS 1146, *5-7 (Bankr. S.D. Fla. Mar. 29, 2007) [finding an individual's UCC filing to himself to be "generously described as incoherent and irrelevant"]. It could bear witness to the use of a mark, however, in this instance there is no corroborating evidence to substantiate that the mark, "PAUL FRANCIS WRUBLESKI," has been actually and continually used in commerce as understood by the legal standard in this Circuit.

Further, the position espoused by the Debtor would necessarily have to be read to include all citizens of the United States.  However, this begs the question to the soundness and validity of this argument since there are numerous American citizens who bear the same name.[3]   It is inconceivable, if not impossible, and surely contradictory to trademark law, to assume that every person has a commercial interest in a common law trademark in his or her name.  This would have a duplicating effect on trademarks of exactly the same mark, which is wholly inconsistent with the notion of trademark law – the interest in a unique mark.  Moreover, this purported interaction between the individual, the government, and his or her pseudo trademark does not come close to establishing legal adoption and use of a mark on goods or services for commercial purposes, which would resonate in the "public mind."

### The validity of federal income taxes

"Like moths to a flame, some people find themselves irresistibly drawn to the tax protestor movement's illusory claim that there is no legal requirement to pay federal income tax." *United States v. Sloan*, 939 F.2d 499, 499 (7th Cir. 1991), cert. denied, 112 S. Ct. 940, 117 L. Ed. 2d 110 (1992).  To the extent that a tax protestor would argue that the federal government is without constitutional authorization to tax personal income, one need only look to the plain language of the Sixteenth Amendment: "Congress shall have the power to lay and collect taxes on incomes, from whatever source derived . . . ." U.S. Const. amend. XVI.  Further, it is well established that citizens of the various states are subject to federal income taxes. *See, e.g., Sloan*, 939 F.2d 499 (citizens of Indiana are subject to the Federal Tax Code); *United States v. Price*, 798 F.2d 111, 113 (5th Cir.

------

[3]The Court is aware that Debtor's name is uncommon.  Even if it were unique, however, for purposes of the argument this fact is not relevant.

8

1986) (citizens of Texas are subject to the Federal Tax Code). It is without question that citizens are required to pay income tax. *See, e.g., Lovell v. United States*, 755 F.2d 517, 519 (7th Cir. 1984) ("All individuals, natural or unnatural, must pay federal income tax on their wages...."); *United States v. Romero*, 640 F.2d 1014, 1017 (9th Cir. 1981) ("In our system of government, one is free to speak out in open opposition to the provisions of the tax laws, but such opposition does not relieve a citizen of his obligation to pay taxes.").

There exists no legal authority that supports the assertion that one may avoid paying federal income tax obligation based on a "removal argument," in which the straw man position is covered. *See* Rev. Rul. 2004-31; 2004-1 C.B. 617. Section 61 of the Internal Revenue Code provides that gross income includes:

> .... all income from whatever source derived, including (but not limited to) the following items:
>> (1) Compensation for services, including fees, commissions, fringe benefits, and similar items;
>> (2) Gross income derived from business;
>> (3) Gains derived from dealings in property;
>> (4) Interest;
>> (5) Rents;
>> (6) Royalties;
>> (7) Dividends;
>> (8) Alimony and separate maintenance payments;
>> (9) Annuities;
>> (10) Income from life insurance and endowment contracts;
>> (11) Pensions;
>> (12) Income from discharge of indebtedness;
>> (13) Distributive share of partnership gross income;
>> (14) Income in respect of a decedent; and
>> (15) Income from an interest in an estate or trust.

26 U.S.C. § 61(a) (2007). Taxable income is the gross income minus the deductions allowed under the Code. *See* 26 U.S.C. § 63(a) (2007). Adjustments to this calculation – income, deductions, and

credits – must be claimed in accordance with the provisions of the Internal Revenue Code and applicable United States Treasury Department ("Treasury") regulations and any other federal law that would pertain to this computation.

Individuals liable for any tax, including income tax, imposed by the Internal Revenue Code shall make a return when required by Treasury regulation. *See* 26 U.S.C. § 6011(a) (2007). Section 6012 of the Internal Revenue Code identifies those persons who are required to file income tax returns, stating "[r]eturns with respect to income taxes shall be made by . . . [e]very individual having for the taxable year gross income which equals or exceeds the exemption amount." 26 U.S.C. § 6012 (2007). Nothing on the record demonstrates that the Debtor was beneath the exemption amount required to preclude him from the mandatory filing of an income tax return. I therefore must conclude that the Debtor was required to file federal tax returns for the years in question under the IRS proof of claim. Section 6151 of the Internal Revenue Code requires that taxpayers pay their tax when the return is due. 26 U.S.C. § 6151(a) (2007); *See also* 26 C.F.R. § 1.6151-1 (2007).

The record does not demonstrate whether the Debtor actually submitted tax returns or not, or, if returns were actually submitted, whether he properly listed his tax liabilities on those returns. There is a common practice of filing an income tax return with a $0.00 amount as a way to avoid paying one's income tax responsibility. However, "[t]here is no authority under U.S. law that permits a taxpayer that has taxable income to avoid income tax by filing a zero return." Rev. Rul. 2004-34; 2004-1 C.B. 619. Federal courts continually uphold penalties levied against individuals that file zero returns despite having income sufficient to give rise to a tax liability. *See Frese v. United States*, 2006 U.S. Dist. LEXIS 3553 (D.N.J. January 30, 2006); *Priest v. IRS,* 2006 U.S. Dist. LEXIS 48050 (C.D. Ill. July 13, 2006)*; Gillett v. United States*, 233 F. Supp. 2d 874 (W.D. Mich.

2002); *Hill v. Commissioner*, 85 T.C.M. (CCH) 1328 (2003); *Rayner v. Commissioner*, 83 T.C.M.

(CCH) 1161 (2002). These courts give no credence to the justification proffered by those filing a

zero return. What is evident from the record before me in this case is that the Debtor had an

obligation to submit tax returns with a true representation of his income for that given year and to

subsequently pay his tax obligations when they came due.

### Paying taxes

The question remains by what means can one satisfy his or her tax liability. Section 6311

of the Internal Revenue Code requires payment of taxes by commercially acceptable means as

prescribed by United States Treasury Department regulation. 26 U.S.C. § 6311 (2007). Subsection

(d) of this Section, "Payment by other means," states in relevant part that:

> (1) Authority to prescribe regulations. The Secretary shall prescribe such regulations as the
> Secretary deems necessary to receive payment by commercially acceptable means, including
> regulations that--
>> (A) specify which methods of payment by commercially acceptable means will be
>> acceptable,
>> (B) specify when payment by such means will be considered received,
>> (C) identify types of nontax matters related to payment by such means that are to be
>> resolved by persons ultimately liable for payment and financial intermediaries,
>> without the involvement of the Secretary, and
>> (D) ensure that tax matters will be resolved by the Secretary, without the involvement
>> of financial intermediaries.

> (2) Authority to enter into contracts. Notwithstanding section 3718(f) of title 31, United
> States Code, the Secretary is authorized to enter into contracts to obtain services related to
> receiving payment by other means where cost beneficial to the Government. The Secretary
> may not pay any fee or provide any other consideration under any such contract for the use
> of credit, debit, or charge cards for the payment of taxes imposed by subtitle A [26 USCS §§
> 1 et seq.].

> (3) Special provisions for use of credit cards. If use of credit cards is accepted as a method
> of payment of taxes pursuant to subsection (a)– . . .

11

26 U.S.C. § 6311(d) (2007). The Treasury Department has not promulgated a rule on this issue, hence, there is no definition for "commercially acceptable means" in the applicable section of the Code of Federal Regulation.

I look to IRS publications and case law for insight as to what actually constitutes a commercially acceptable form of payment for tax purposes. The United States Code requires that ". . .coins and currency (including Federal reserve notes and circulating notes of Federal reserve banks and national banks) are legal tender for all debts, public charges, taxes, and dues." 31 U.S.C. § 5103 (2007). The IRS has taken the view that under the Internal Revenue Code payment of taxes must be made by cash, check or money order. 26 U.S.C. § 6311, 6316 (2007); *See also* IRS Gen. Litig. Bull., 1996 GLB LEXIS 2, *27-28 (1996) [Describing the IRS's General Counsel's position on acceptable tender for tax obligation]. For example, the IRS has refused to accept real property in payment for tax liabilities. Rev. Rul. 76-350; 1976-2 C.B.; IRS Gen. Litig. Bull., 1996 GLB LEXIS 2, *27-28 (1996). Likewise, the IRS holds that it is not obligated to accept an individual's personal property in satisfaction of tax liability. *See Calafut v. Commissioner*, 277 F. Supp. 266 (M.D. Pa. 1967). It has also taken the position that it cannot accept stock as payment. IRS Gen. Litig. Bull., 1992 GLB LEXIS 3, *35-36 (1992).

What is evident is that there is no provision in the Internal Revenue Code that automatically allows the Debtor to offset his debt based on alleged debt owed to him. It is certainly plausible that the IRS could accept, as an offset, a final monetary judgment against the federal government in satisfaction of tax liability. Absent more, that decision is left to the IRS to make. It is also plausible that a debtor in bankruptcy proceedings who possessed a money judgment or some other liquidated claim against the United States could ask the bankruptcy court to setoff the respective claims by and

12

against the United States under 11 U.S.C. § 553 or under some other provision of law.  The record

shows no evidence that this Debtor possesses either a monetary judgment or some other liquidated

claim against the government, nor has he established any colorable claim to stand on.  His apparent

claim that the government owes him $10 million is patently implausible – but if the Debtor is

correct, his appropriate remedy lies in some other forum.  As demonstrated above, there is no legal

justification to give this Court jurisdiction to hold that the government is indebted to the Debtor

based on the asserted straw man argument.

### Requirements for reconsideration

Finally, the Motion requests me to reconsider and vacate the order dismissing this case.

Whether considered under Federal Rule of Bankruptcy Procedure 9023, applying Federal Rule of

Civil Procedure 59, or Federal rule of Bankruptcy Procedure 9024, applying Federal Rule of Civil

Procedure 60, the grounds on which such relief can be granted are limited.  Essentially, the Debtor

would have to establish one of the following: (1) mistake, inadvertence, surprise, or excusable

neglect; (2) newly discoverable evidence; (3) fraud; (4) that the judgement is void; (5) that the

judgment has been satisfied or similarly is no longer applicable; or (6) some other similar basis.  In

addition, such motions are aimed at reconsideration, not initial consideration.  Therefore, parties may

not use them to raise arguments which could and should have been raised prior to the entry of

judgment. *Seamon v. Vaughan*, 921 F.2d 1217, 1220 (11th Cir. 1990).  As noted by the District Court

for the Middle District of Florida:

> The Court's consideration of a prior order is an extraordinary remedy. Exercise of this power
> must of necessity be used sparingly. When issues have been carefully considered and
> decisions rendered, the only reason which should command reconsideration of that decision
> is a change in a  factual or a legal underpinning upon which the decision was based. The

movant must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. [citations omitted].

*Taylor Woodrow Constr. v. Sarasota/Manatee*, 814 F. Supp. 1072, 1072-73 (M.D. Fla. 1993).

The Debtor alleges in the Motion that he in essence has satisfied his debt to the IRS and for that reason the Court's dismissal of his case was a mistake. The mere assertion that the Debtor, through the use of a facially frivolous and legally unsupported claim, has satisfied his tax liabilities through alleged debt owed to him by the Federal Government, does not provide a legal basis for ignoring his federal income tax obligations. Instead, based on the record I must recognize the IRS's claim against the Debtor. Further, nothing on the record demonstrates that the Debtor has established a valid claim against the United States or any of its agencies. Since I have already considered and rejected Debtor's arguments and have now further explained in this Order why the Debtor's position with regard to alleged debt owed to him by the federal government is not supported by equity or law, it is **ORDERED** that the Debtor's Motion to Reconsider and Vacate Order Dismissing Case [DE 59] is **DENIED.**

###

Copies Furnished To:

Paul Francis Wrubleski
1588 Zenith Way
Fort Lauderdale, FL 33327

Robin R. Weiner

U.S. Trustee

Hon. Henry M. Paulson, Jr.
Secretary of the Treasury
Department of Treasury
1500 Pennsylvania Ave
Washington, DC 20220